UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIPPE LOUIS VILLAREAL<br><br>       Plaintiff,<br><br>  v.<br><br>METROMILE, INC., DAN PRESTON, JOHN BUTLER, DAVID FRIEDBERG, COLIN BRYANT, SANDRA CLARKE, RYAN GRAVES, and VIKAS SINGHAL,<br><br>       Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Philippe Louis Villareal ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Metromile, Inc. ("Metromile" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Metromile, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Metromile by Lemonade, Inc. ("Lemonade") ("Proposed Transaction").

2. On November 8, 2021, Metromile, Lemonade, Citrus Merger Sub A, Inc., a wholly owned subsidiary of Lemonade, and Citrus Merger Sub B, LLC, another wholly owned subsidiary of Lemonade entered into an Agreement and Plan of Merger ("Merger Agreement"), whereby each share

1

of Metromile common stock will be converted into the right to receive 0.05263 shares of Lemonade common stock ("Merger Consideration").

3. On December 14, 2021, in order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement ("Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Metromile and Lemonade; (ii) the financial analyses performed by the Company's financial advisor, Allen & Company LLC ("Allen & Company") in connection with the Proposed Transaction; (iii) the non-disclosure agreement executed between Metromile and Party B; and (iv) whether any members of the strategic committee had potential conflicts of interest in connection with the Proposed Transaction.

5. The Proposed Transaction is expected to close in the second quarter of 2022, so the special meeting of Metromile's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote"). Therefore, it is imperative that the material information omitted from the Registration Statement is disclosed prior to the Shareholder Vote, so the Company's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Metromile's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, Metromile's legal counsel in connection with the Proposed Transaction, Kirkland & Ellis LLP, is located in this District at 601 Lexington Avenue, New York, NY 10022.

**PARTIES**

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Metromile common stock.

3

11. Defendant Metromile is a public company incorporated under the laws of Delaware with principal executive offices located at 425 Market Street, San Francisco, CA 94105. The Company's common stock trades on the Nasdaq under the ticker symbol "MILE."

12. Defendant Dan Preston is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

13. Defendant John Butler is, and has been at all relevant times, a director of the Company, Chairman of the Board, and member of the strategic committee.

14. Defendant David Friedberg is, and has been at all relevant times, a director of the Company and its Founder

15. Defendant Colin Bryant is, and has been at all relevant times, a director of the Company.

16. Defendant Sandra Clarke is, and has been at all relevant times, a director of the Company.

17. Defendant Ryan Graves is, and has been at all relevant times, a director of the Company and member of the strategic committee.

18. Defendant Vikas Singhal is, and has been at all relevant times, a director of the Company and member of the strategic committee.

19. Defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.     **Background of Metromile, Lemonade, and the Proposed Transaction**

20. Metromile provides pay-per-mile car insurance services in the United States and internationally. The Company also licenses artificial intelligence claims platform to automate claims, reduce losses associated with fraud, and unlock the productivity of insurance carriers' employees. In

addition, Metromile offers The Pulse, a device that plugs into the diagnostic port of its customer's car and transmits data over wireless cellular networks.

21.  Lemonade provides various insurance products in the United States and Europe. Its insurance products cover stolen or damaged property, and personal liability that protects its customers if they are responsible for an accident or damage to another person or their property. Lemonade also offers renters, homeowners, pet, and life insurance products, as well as landlord insurance policies. Further, it operates as an agent for other insurance companies.

22.  According to the November 8, 2021, joint press release announcing the Proposed Transaction:

### Lemonade To Acquire Metromile

New York (November 8, 2021)—Lemonade (NYSE: LMND) the insurance company powered by AI and social good, and Metromile (NASDAQ: MILE, MILEW), the data science company focused on auto insurance, have entered into a definitive agreement pursuant to which Lemonade will acquire Metromile in an all-stock transaction that implies a fully diluted equity value of approximately $500 million, or just over $200 million net of cash. Under the terms of the transaction, Metromile shareholders will receive Lemonade common shares at a ratio of 19:1. (*Read more on why Lemonade is acquiring Metromile*)

While Lemonade has been at the forefront of using big data and AI in home and pet insurance, Metromile has been trailblazing a parallel path for car insurance. Metromile's car-mounted precision sensors took over 400 million road trips in recent years, covering billions of miles and sending real-time streams to the Metromile cloud. These were cross referenced with actual claims data, yielding precise predictions for losses per mile driven.  These algorithms hold the promise of propelling Lemonade Car from a newcomer in the car insurance space to its vanguard.

"We launched Lemonade Car last week, and we think you'll love how it looks and handles. Pop the hood and you'll see that it's powered by telematics and architected to learn from the data it generates, with precision pricing as its ultimate destination," said Daniel Schreiber, Lemonade CEO and cofounder. "That's where Metromile comes in. They have been down this road billions of times, and their proprietary data and machine learning algorithms can vault us over the most time and cost intensive parts of the journey. In a vast and competitive market like auto insurance, today's deal is a huge unlock of value for our customers and shareholders."

>Metromile enjoys 49 state licenses, over $100 million of seasoned in-force premium (IFP), over $250 million of cash on the balance sheet, and a team unmatched for their expertise in harnessing big data and AI for car insurance.
>"We've long admired Lemonade for its beautiful products, world-class customer experience, unprecedented growth, and socially-impactful business model," said Dan Preston, CEO of Metromile. "The data science-driven technology platform we built created fairer and more individualized car insurance for consumers in an industry marred by vast inequities. Joining forces with Lemonade Car will create the most customer-centric, fair, and affordable car insurance, and is a great outcome for Metromile shareholders, who will benefit as shareholders of the combined company. It also means that now, homeowners, renters, and drivers alike can have all of their insurance needs with a single company that truly has their best interests at heart."
>
>The transaction is expected to close during Q2 2022, once all regulatory approvals have been secured. The transaction requires the approval of Metromile stockholders, and is subject to other customary closing conditions.

(Emphasis in original).

## II. The Registration Statement Omits Material Information

23. Defendants filed a materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, to ensure it did not contain any material misrepresentations or omissions. Therefore, the Registration Statement should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

24. <u>First</u>, Defendants must disclose the figures underlying the inputs used to calculate the Unlevered Free Cash Flow projections for both Lemonade and Metromile, as well as the EBITDA and Adjusted Gross Profit projections for Lemonade. Notably, net income/loss was used as an input to calculate Lemonade's EBITDA projections, yet the Registration Statement entirely omits Lemonade's net income. Indeed, net income projections are a crucial metric for shareholders to be apprised of when evaluating a transaction. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) ("The disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss.").

25. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed-the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known-but it may not choose half-truths. *See Transgenomic*, 916 F.3d at 1125 (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

26. <u>Second</u>, the Registration Statement omits material information regarding the financial analyses performed by Allen & Company in connection with the Proposed Transaction.

27. For Allen & Company's *Selected Public Companies Analyses*, the Registration Statement fails to disclose the individual multiples observed for each of the selected peer companies for Metromile and Lemonade, respectively.

28. Similarly, for the *Selected Precedent Transactions Analysis* for Metromile, the Registration Statement also omits the individual multiples observed for each of the selected transactions.

29. With respect to Metromile's *Discounted Cash Flow Analysis*, the Registration Statement fails to provide the following information: (i) the implied terminal values for the Company; (ii) the inputs and assumptions underlying Allen & Company's selected range of net operating profit after-tax multiples of 16.0x to 19.0x and a selected revenue multiple of 6.5x; and (iii) the inputs and assumptions underpinning selection of a discount rate ranging from 8.5% to 9.5%.

30. To that same effect, for Lemonade's *Discounted Cash Flow Analysis*, the Registration Statement omits: (i) Lemonade's implied terminal value; (ii) the inputs and assumptions underlying the selected range of net operating profit after-tax multiples of 16.0x to 19.0x; and (iii) the inputs and

assumptions underlying the selected discount rates ranging from 8.0% to 9.0%.

31. These key inputs are material to the Company's shareholders, and their omission renders the summary of Allen & Company's *Discounted Cash Flow Analyses* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added). Without the aforementioned, Metromile's shareholders cannot evaluate for themselves the reliability of Allen & Company's *Discounted Cash Flow Analyses*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company and Lemonade or were the result of an unreasonable judgment by Allen & Company, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

32. <u>Third</u>, the Registration Statement indicates that the Company entered into a non-disclosure agreement ("NDA") with Party B but fails to disclose whether that NDA contained a standstill provision, and if so, whether that standstill provision contained a "don't ask don't waive" ("DADW") provision, including whether that provision had fallen away upon execution of the Merger Agreement or still remains in effect. Failure to disclose the existence of a DADW provision creates

the false impression that an interested party who signed an NDA could have made a superior proposal, but that is not true. If that NDA contained a DADW provision, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, omission of this information is misleading because potential topping bidders in the marketplace may be precluded from making a superior offer.

33. Fourth, the Registration Statement discloses that the Company created a strategic committee comprised of Defendant Butler, Defendant Graves, and Defendant Singhal, yet the Registration Statement fails to disclose whether there were any potential conflicts of interest for these members in connection with the Proposed Transaction.

34. In sum, omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

39. Defendants have issued the Registration Statement with the intention of soliciting the Company's public common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Metromile and Lemonade; (ii) the financial analyses performed by Allen & Company in connection with the Proposed Transaction; (iii) the NDA executed between Metromile and Party B; and (iv) whether any members of the strategic committee had potential conflicts of interest in connection with the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from

the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

41. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Allen & Company reviewed and discussed their financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Allen & Company, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the Company's projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Allen & Company's analyses in connection with receipt of the fairness opinion, question Allen & Company as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from

the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

43.     Metromile is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

44.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Metromile within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Metromile, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies

of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.  Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 23, 2021                    **MONTEVERDE & ASSOCIATES PC**

/s/ Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*